IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ARTHUR HENRY BALLARD, as personal representative of the estate of Joseph Ryan Ballard, deceased,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS, LLC,<br><br>Defendant. | CASE NO. 2:20-CV-260-WKW<br>[WO] |

## **MEMORANDUM OPINION AND ORDER**

In the mid-1990s, General Motors Corporation (Old GM) manufactured and sold the 1996 Chevrolet Blazer. Over two decades later, Joseph Ryan Ballard died in a single vehicle rollover accident while driving one of Old GM's 1996 Chevy Blazers. But a decade before Ballard passed, Old GM filed for bankruptcy, leading to the emergence of a different entity: Defendant General Motors, LLC (New GM). However, when Old GM originally sold the 1996 Blazer, it did so subject to Alabama's implied warranties of merchantability under § 7-2-314 of the Alabama Code. The pending motion raises a single issue: Whether New GM, in its acquisition of Old GM's assets, assumed the implied warranties of merchantability from Old GM, and therefore can be held liable for an alleged breach of that warranty? If New GM did not assume the implied warranty from its predecessor, then Plaintiff Arthur Henry Ballard, as the personal representative of the estate of

Joseph Ballard, cannot maintain his Alabama law action for a breach of the implied warranties of merchantability against New GM.

Before the court is Defendant New GM's motion for summary judgment. (Doc. # 45.) Plaintiff responded in opposition (Doc. # 49) to which Defendant filed a reply (Doc. # 51). For the reasons to follow, New GM did not assume the implied warranties of merchantability from Old GM. Therefore, Defendant New GM's motion for summary judgment will be granted.[1]

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(a). Personal jurisdiction and venue are uncontested.

## II. STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial

---

[1] Also pending before the court is Defendant New GM's motion for protective order. (Doc. # 46.) Because the court finds that the motion for summary judgment should be granted, the motion for protective order will be denied as moot.

responsibility of informing the district court of the basis for the motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* Alternatively, a movant who does not have a trial burden of production can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials . . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact.").

If the movant meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute material to each of its claims for relief exists. *Celotex Corp.*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

3

## III.  BACKGROUND

There is only one disputed fact for the purposes of this opinion. [2] But first, the undisputed facts are as follows:  Joseph Ryan Ballard was driving a 1996 Chevrolet Blazer, VIN 1GNCS13W2T2174293, on February 22, 2019, when he was involved in a fatal, single vehicle accident in Covington County, Alabama.  The 1996 Blazer was designed, manufactured, marketed, labeled, sold, and distributed by Old GM in November 1995, nearly a quarter of a century prior to the accident.

Old GM filed for Chapter 11 bankruptcy on June 1, 2009.  Part of the bankruptcy proceeding led to the sale of Old GM to NGMCO, Inc., New GM's predecessor.  Under the terms of the Sale Order and the Sale Agreement, New GM assumed certain specifically identified liabilities of Old GM; all other liabilities were retained by Old GM.  (Doc. # 45-2.)  Specifically, the Sale Agreement provides: "[E]xcept for Assumed Liabilities, [New GM] is not liable for claims based on Old GM conduct . . . ."  (Doc. # 45 at 5.)  Rather, the sale of assets to New GM was free and clear of all liabilities, except those liabilities that were expressly assumed. Notably, New GM did not assume  "successor liability claims" because, as a New York Bankruptcy Court found, New GM "is not a successor in interests to [Old GM]; it is a completely separate legal entity from Old GM."  (*Id.* at 5–6.)

---

[2] In his response in opposition to New GM's motion for summary judgment, Ballard disputes only paragraph 6 of New GM's purported material of facts, *see* (Doc. # 45 at 4–6)—the remainder of New GM's purported facts are undisputed (Doc. # 50 at 2).

4

So, the parties agree that New GM is liable for the warranties it assumed, but not for the warranties that Old GM retained. The parties also agree that all liabilities arising from Old GM's *express* warranties were included as liabilities assumed by New GM.

That leads to the single factual dispute at bar: Whether Old GM's *implied* warranties, including the implied warranties of merchantability, and specifically implied warranties relating to liability for personal injury actions, were assumed by New GM through operation of the Sale Order and Agreement?

## IV. DISCUSSION

In Ballard's sole count, he alleges that New GM "breached its implied warranties of merchantability as defined by Ala. Code. § 7-2-314, rendering the [] Blazer unfit for its ordinary purpose to provide adequate, reliable, and safe transportation." (Doc. # 22 at 11.) For New GM to have breached this implied warranty, it must have been subject to the warranty. *Bagley v. Mazda Motor Corp.*, 864 So. 2d 301, 315 (Ala. 2003) (holding that, under Alabama law, a breach of an implied warranty requires proof of "the existence of the implied warranty. . . ."). It is undisputed for the purposes of this opinion that the implied warranties of merchantability attached to Old GM as the seller of the subject Blazer. *See* ALA. CODE § 7-2-314 ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."). The only question before the court is whether New GM assumed liability for Old

5

GM's breaches of its implied warranties of merchantability when New GM acquired Old GM's assets.

To be clear, in contrast to the theories raised at the motion-to-dismiss stage, Ballard now, at summary judgment, only pursues an assumed liability theory. (Doc. # 50 at 1 (Plaintiff's claim is based "solely on a theory of *assumed* liability.")). Ballard no longer asserts a theory of successor liability. *Contra Ballard v. Gen. Motors,* LLC, 572 F. Supp. 3d 1154, 1161 (M.D. Ala. 2021) (Watkins, J.) (assuming as true that, as originally plead by Ballard, New GM was the "successor in interest to [Old] GM's warranty liabilities."). However, even if Ballard were presently pursuing a successor theory of liability, such an argument appears to be a dead end. *See e.g., In re Motors Liquidation Co.*, 549 B.R. 607, 613 (Bankr. S.D.N.Y. 2016) ("[T]he record in this bankruptcy case and the prior decisions of this Court make it abundantly clear that [New GM] is not a successor in interest to Old GM."). In short, it appears that plaintiffs like Ballard lost the successor battle in bankruptcy court, forcing Ballard to pursue—as he does here—solely a "theory of assumed liability." (Doc. # 50 at 1).

As to that theory, New GM argues that it never assumed the implied warranty of merchantability when purchasing Old GM, that New GM actually *disclaimed* any implied warranties, and therefore that New GM cannot be held liable for any alleged breach of the implied warranties of merchantability. Ballard contends that New GM is "liable for Old GM's . . . implied warranty obligations to the extent they are

6

liabilities for personal injury (as is the case here)." (Doc. # 50 at 2.) That is, Ballard argues that New GM, through the Sale Order and Agreement, assumed liability from Old GM for breaches of the implied warranty of merchantability in the personal injury context. New GM, on the other hand, argues that *all* of Old GM's implied warranties, regardless of whether relating to personal injury or not, were expressly *not* assumed by New GM. (Doc. 51 at 2.) Accordingly, the court is tasked with interpreting the Sale Order and Sale Agreement to determine whether New GM assumed Old GM's liabilities for personal injury actions deriving from alleged breaches of Old GM's implied warranties of merchantability.

While the substance of the breach action is governed by Alabama law, *CSX Transp., Inc. v. Trism Specialized Carriers, Inc.*, 182 F.3d 788, 790 (11th Cir. 1999) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)), the Sale Order, and accompanying Sale Agreement, are governed by New York law (Doc. # 45-2 at 157 ("The construction, interpretation and other matters arising out of or in connection with this Agreement (whether arising in contract, tort, equity or otherwise) shall in all respects be governed by and construed . . . to the extent the Bankruptcy Code is not applicable, in accordance with the Laws of the State of New York, without giving effect to rules governing the conflict of laws.")).

"Under the *Amended and Restated Master Sale and Purchase Agreement*, New GM assumed certain liabilities of Old GM ('Assumed Liabilities')." *In re Motors Liquidation Co.*, 604 B.R. 138, 140-41 (Bankr. S.D.N.Y. 2019). The Master

7

Sale and Purchase Agreement defines "Assumed Liabilities" in Section 2.3. (Doc. # 45-2 at 33.) Generally, Section 2.3, as amended, provides that New GM assumes "all liabilities" for personal injuries caused by Old GM's motor vehicles. (Doc. # 45-2 at 165.) Ballard contends that "all" means "all" and because he has brought a claim for personal injury, New GM assumed responsibility for it.

However, Section 2.3(b) states that New GM "shall not assume . . . other than the Assumed Liabilities . . . all Liabilities arising out of, related to or in connection with any [] implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty." (Doc. # 45-2 at 88–90.) Moreover, a general provision in the Sale Order states that New GM "is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties." (*Id.* at 45.) And, under Section 6.15, which discusses Warranty Claims, the Order states, "for avoidance of doubt, [New GM] shall not assume Liabilities arising under the law of implied warranty or other analogous provisions of state Law. . . ." (*Id.* at 127.)

Admittedly, there is some inconsistency and conflict between (1) the general provision that New GM assumes "all liabilities" for personal injury claims, and (2) the specific provisions that expressly disclaim any liabilities deriving from implied warranties (which could include, as it does here, personal injury liabilities brought under an implied warranty). Nonetheless, where there is conflict between a general provision and a specific provision, the specific provision typically controls. *In re*

8

*AMR Corp.*, 485 B.R. 279, 301 (Bkrtcy. S.D.N.Y. 2013); *see also John Hancock Mut. Life v. Carolina Power & Light*, 717 F.2d 664, 669 n. 8 (2d Cir. 1983) ("New York law recognizes that definitive, particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary."); *In re Lehman Bros. Holdings Inc.*, 761 F.3d 303, 313 (2d Cir. 2014) ("To the extent that there appears to be conflict between these provisions, the specific governs the general."); *Bank of Tokyo-Mitsubishi v. Kvaerner*, 671 N.Y.S.2d 905, 910 (N.Y. App. Div. 1998) (holding that "if there is an inconsistency between a general provision and a specific provision of a contract, the specific provision controls."); *Goldberg v. Bear, Stearns & Co., Inc.*, 912 F.2d 1418, 1421 (11th Cir. 1990) ("When general propositions in a contract are qualified by the specific provisions, the rule of construction is that the specific provisions in the agreement control."); Restatement (Second) of Contracts § 203 (1981) ("In the interpretation of a promise or agreement or a term thereof, . . . specific terms and exact terms are given greater weight than general language.") So too here does the specific disclaiming language govern, and Ballard cites no law indicating that a different canon of construction counsels toward the opposite conclusion.

Accordingly, based on the terms of the Sale Order and Agreement, and New York construction principles, the court concludes that New GM specifically disclaimed liabilities deriving from implied warranties, including the implied warranties of merchantability, and therefore did not assume said warranties, meaning

9

that Ballard cannot sue New GM for a breach of those implied warranties under an assumption theory of liability.

## V. CONCLUSION

Accordingly, it ORDERED:

(1) That Defendant General Motors, LLC's motion for summary judgment (Doc. # 45) is GRANTED.

(2) That Defendant General Motors, LLC's motion for protective order (Doc. # 46) is DENIED as moot.

A final judgment consistent with this opinion and order will be entered separately.

DONE this 7th day of June, 2023.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE